UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| LINCOLN GENERAL INSURANCE COMPANY | § | |
| | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:07-CV-1985-B |
| | § | |
| US AUTO INSURANCE SERVICES, INC., et al. | § | |
| | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM ORDER

Before the Court is the Motion for Judgment on the Pleadings ("Motion") (doc. 61) filed by

Defendants Gamma Group, Inc., CSI Agency Services, Inc., Alpha Partners Ltd., Santa Fe Auto

Insurance Company, James D. Maxwell and James T. Maxwell.  For the reasons stated below, the

Motion (doc. 61) is **GRANTED in part and DENIED in part**.  Also before the Court is the

Defendants' Motion for Leave to File Notice of Supplemental Authority on their Motion for

Judgment on the Pleadings (doc. 111), which the Court **DENIES**.

## I.

## BACKGROUND[1]

This case involves numerous claims brought by Lincoln General Insurance Company

("Lincoln General") against  U.S. Auto Insurance Services, Inc. ("U.S. Auto"), and several other

---

[1]  All facts recited here are drawn from the Amended Complaint filed by Plaintiff.  These
facts are taken as true for the purpose of the Court's analysis of the Rule 12(c) Motion for Judgment
on the Pleadings.  *See Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008).

related entities and individuals, involving the allegedly intentional miscalculation of amounts owed to Lincoln General under certain Agreements between Lincoln General and U.S. Auto.  In a nutshell, Lincoln General argues it has been underpaid and is owed millions of dollars from U.S. Auto.  Lincoln General argues the other Defendants are also liable for U.S. Auto's actions under various theories.  In a long and winding complaint, Lincoln General sets forth the facts it argues entitle it to recoup funds from the Defendants.  The complex and often confusing nature of the multitude of claims, as framed by the movants in their Motion, prompts the Court to set forth only the facts relevant to its analysis of this Motion.

## A.    Factual Background

The Defendants in this case are U.S. Auto, Gamma Group Inc. ("Gamma"), CSI Agency Services, Inc. ("CSI"), Alpha Partners, Ltd. ("Alpha"), and James Douglas Maxwell a/k/a Doug Maxwell ("Doug Maxwell"), Santa Fe Auto Insurance Company ("Santa Fe"), and James Thornton Maxwell a/k/a Jim Maxwell ("Jim Maxwell").[2]  The Plaintiff, Lincoln General, is the reinsurer of various automobile insurance policies sold by U.S. Auto.   Under certain Agreements between Lincoln General and U.S. Auto, Lincoln General is entitled to a portion of the premiums arising under these policies.  (Am. Compl. ¶ 13.)  U.S. Auto's responsibilities included the "collection and handling of premiums and the proper handling and payment of claims."   (*Id.* at ¶ 33.)   The Agreements "also required U.S. Auto to provide Lincoln General with monthly reports detailing and calculating the amounts owing to Lincoln General."  (*Id.* at ¶ 37.)  In exchange for its services, U.S. Auto was to receive certain commissions.  (*Id.* at ¶ 32.)  From Lincoln General's viewpoint, U.S.

---

[2]  The Amended Complaint also named  Benfield, Inc. ("Benfield") as a defendant. However, all claims against Benfield, Inc. were subsequently dismissed and it is no longer a party to this action.

Auto's calculation of these commissions is at the heart of this suit.  (*Id.*)

Lincoln General alleges that "in mid-2007, shortly after U.S. Auto decided it would transition its business to Santa Fe and would no longer write new policies to be reinsured by Lincoln General, U.S. Auto began withholding premiums due to Lincoln General."  (*Id.* at ¶ 14.)  Further, "to inflate its compensation, U.S. Auto improperly changed the way it calculated its own commissions despite having used a different, agreed upon method for more than four years," and allegedly "impermissibly withheld millions of additional dollars[]."  (*Id.* at ¶ 44.)  According to Lincoln General, U.S. Auto "knowingly inflated its commissions and substantially understated the balance due to Lincoln General, in violation of the [Agreements]," and continues to "withhold and misappropriate millions" under the guise of collecting its commission.  (*Id.* at ¶¶ 44, 48.) Lincoln General asserts this amount is "secured" by Defendants Gamma, CSI, and Alpha.  (*Id.* at ¶ 48.)

**B.    Relationship Between the Various Entities and Individuals**

According to Lincoln General, "Defendants U.S. Auto, Gamma, CSI, Alpha, and Santa Fe (collectively, the "Maxwell Group") are affiliated companies that share a business address and office space, have acted as guarantors for at least some of each others' liabilities, sponsor and administer a 401(k) plan for common employees, share (at least in part) common ownership and leadership, have combined financial statements (at least with regard to all companies but Santa Fe []), and are otherwise operated as a single business enterprise, sharing and integrating their resources to achieve the common business purpose of providing insurance related services." (*Id.* at ¶ 16.)

Furthermore, Lincoln General alleges that "Doug Maxwell owns, in whole or part, directly or indirectly, each of the members of the Maxwell Group, and his ownership interests in these entities are substantial." (*Id.* at ¶ 17.)  "He is the lone director, President, Vice President, Secretary,

and Treasurer of U.S. Auto and Gamma; a director, Vice President, and Treasurer of CSI; a limited partner in Alpha, for which the general partner is CSI; and a director and President of Santa Fe." (*Id.*)  "As such, Doug Maxwell maintains significant control over all members of the Maxwell Group." (*Id.*)  Lincoln General asserts that Doug Maxwell has commingled his individual assets with those of the Maxwell Group and "various members of the Maxwell Group, including U.S. Auto, have been designated in one or more years as S Corporations and, for federal income tax purposes, the profits and losses of such members of the Maxwell Group have been passed through and recognized by Doug Maxwell, individually, in proportion to his interests in those companies." (*Id.* at ¶¶ 19–20.)

According to Lincoln General, "Doug Maxwell is the son of Jim Maxwell, who is, directly or indirectly, a partial owner of CSI, Alpha, and Santa Fe, and an officer of CSI." (*Id.* at ¶ 18.)  Lincoln General alleges "Jim Maxwell has provided substantial funding and financing to various members of the Maxwell Group and has remained involved with their business dealings." (*Id.*)  Accordingly, Lincoln General alleges, "the Maxwell Group and each of its members serve as Doug Maxwell's alter ego through which he engages in various facets of the insurance business, and he is individually liable for the acts, duties, and responsibilities of each of those companies." (*Id.* at ¶ 22.)

Lincoln General alleges that Jim Maxwell "intentionally and willfully assisted, induced, and/or conspired" in U.S. Auto's violation of the [Agreements] and breach of trust and/or fiduciary duties.  (*Id.* at ¶ 51.)  Furthermore, "though not an officer, owner, or director of U.S. Auto, Jim Maxwell was involved in U.S. Auto's improper conduct and was motivated by both his pecuniary interests, as partial owner of Santa Fe, CSI, and Alpha and as a lender to one or more members of the Maxwell Group, and by virtue of his familial relationship to Doug Maxwell." (*Id.*)

- 4 -

C.     **Procedural Background**

Lincoln General filed this suit on November 27, 2007.  In its Amended Complaint filed May 1, 2008, Lincoln General brings claims of breach of contract, tortious interference with a contract, breach of trust and/or fiduciary duties, aiding and abetting breach of trust and/or fiduciary duties, misappropriation and conversion of funds, unjust enrichment, and equitable accounting.  As to the majority of claims, Lincoln General asserts U.S. Auto is liable for its own conduct; Gamma, CSI, and Alpha are liable as guarantors; and Doug Maxwell, Gamma, CSI, Alpha, and Santa Fe are liable by virtue of the single business enterprise or alter ego doctrines.  Now before the Court is the Motion for Judgment on the Pleadings filed by Defendants Santa Fe, Alpha, CSI, Gamma, Doug Maxwell, and Jim Maxwell seeking the dismissal of various claims brought against them by Lincoln General.[3]

---

[3] Defendant U.S. Auto does not join in the Motion for Judgment on the Pleadings.  For the reader's convenience, a summary of the movants as to various claims and theories is as follows:

Movants Doug Maxwell, Gamma, CSI, Alpha, and Santa Fe move for dismissal of the following claims based on the single business enterprise doctrine: (1) Breach of Contract; (2) Breach of Trust and/or Fiduciary Duties; (3) Aiding and Abetting Breach of Trust and/or Fiduciary Duties; and (4) Misappropriation and Conversion of Funds.

Movants Doug Maxwell, Gamma, CSI, Alpha, and Santa Fe move for dismissal of the following claims based on the alter ego doctrine: (1) Breach of Contract; (2) Breach of Trust and/or Fiduciary Duties; (3) Aiding and Abetting Breach of Trust and/or Fiduciary Duties; and (4) Misappropriation and Conversion of Funds.

Movants Gamma, CSI, and Alpha move for dismissal of the following claims based on their alleged status as guarantors: (1) Breach of Contract; (2) Breach of Trust and/or Fiduciary Duties; and (3) Misappropriation and Conversion of Funds.

Movants Jim Maxwell, Gamma, CSI, Alpha, and Santa Fe move for dismissal of the Tortious Interference with Contract claims.

Movants Doug Maxwell, Gamma, CSI, Alpha, and Santa Fe move for dismissal of the Unjust Enrichment claims.

Movants Gamma, CSI, Alpha, Santa Fe, Doug Maxwell, and Jim Maxwell move for dismissal of all claims for Attorney's Fees.

In the Court's view, the movants seek to preclude Lincoln General from proceeding on several causes of action *under specific theories of liability,* such as single business enterprise, alter ego, and guaranty, rather than addressing the causes of action individually.   The Court will address the movants' arguments with regard to each of these theories in the manner framed by movants in their Motion — namely by addressing whether the theories of liability themselves fail as a matter of law.

With the relevant allegations contained in the pleadings laid out above, the Court now turns its attention to the Motion for Judgment on the Pleadings.   Because the contracts between the parties are governed by Texas law, the Court will apply Texas law to the substantive matters.

## II.

## LEGAL STANDARD

A Rule 12(c) motion for judgment on the pleadings is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts. *Hebert Abstract Co. v. Touchstone Props., Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990) (per curiam) (citing 5A Wright & Miller, FEDERAL PRACTICE AND PROCEDURE § 1367, at 509-10 (1990)).   The standard for evaluating a 12(c) motion is the same as the standard for evaluating a 12(b)(6) motion for failure to state a claim.   *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008); *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 313 n. 8 (5th Cir. 2002) (citing 5A Charles A. Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 1368, at 591 (Supp. 2002)).   Motions to dismiss for failure to state a claim are viewed with disfavor and are rarely granted.   *See Priester v. Lowndes County*, 354 F.3d 414, 418 (5th Cir. 2004).   The motion should be granted only if there is no issue of material fact and if the pleadings show that the moving party is entitled to prevail as a matter of law. *Greenberg v. Gen.*

*Mills Fin. Group, Inc.*, 478 F.2d 254, 256 (5th Cir. 1973).  A complaint should only be dismissed if it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 46 (1957).

The Court "must accept the factual allegations in the pleadings as true" and liberally construes the claims in the light most favorable to the plaintiff. *MySpace, Inc.*, 528 F.3d at 418; *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007).  "[T]he central issue is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief." *MySpace, Inc.*, 528 F.3d at 418 (quoting *Hughes v. the Tobacco Inst., Inc.*, 278 F.3d 417, 420 (5th Cir. 2001)). However, the Court "will not strain to find inferences favorable" to the plaintiff. *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (quoting *Southland Sec. Corp.  v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004) (internal quotations omitted)). The plaintiff's "obligation to provide the grounds of entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Bell Atlantic Corp. v. Twombly*, --- U.S. ----, 127 S.Ct. 1955, 1964–65 (2007) (internal quotations marks and brackets omitted).  "Factual allegations must be enough to raise a right to relief above the speculative level[.]'" *Id.* at 1965.

## III.

## ANALYSIS

In their Motion, the movants seek to preclude Lincoln General's ability to proceed on several causes of action as a matter of law.  The court addresses their arguments in turn.

### A.    Single Business Enterprise as to Gamma, CSI, Alpha, Santa Fe, and Doug Maxwell

Lincoln General originally asserted two alternative theories for piercing the corporate veil

to impose liability on Gamma, CSI, Alpha, Santa Fe, and Doug Maxwell for various claims — single business enterprise and alter ego.  Lincoln General had argued in its original briefing on the Motion to Dismiss that the single business enterprise doctrine allows veil-piercing in this case.  Movants argue that single business enterprise is not a basis for imposing vicarious liability in Texas and they are entitled to dismissal of all the claims basing liability on the single business enterprise doctrine.

The Court agrees that any claims based upon the single business enterprise doctrine fail as a matter of law.  The Texas Supreme Court issued an opinion, after the parties had filed their briefing on this motion, indicating that single business enterprise is not a viable theory for piercing the corporate veil for the purpose of imposing liability.  *SSP Partners v. Gladstrong Investments (USA) Corp.*, 275 S.W.3d 444, 455 (Tex. 2008) (holding that the single business enterprise liability theory will not support the imposition of one corporation's obligations on another); *see also Academy of Skills & Knowledge, Inc. v. Charter Schools, USA, Inc.*, 260 S.W.3d 529, 539 (Tex. App.–Tyler 2008, pet. filed Oct. 15, 2008) (holding single business enterprise doctrine "does not exist under Texas law").  Plaintiff filed a Notice of Supplemental Authority recognizing the "death" of the single business enterprise doctrine in Texas.  *See SSP Partners*, 275 S.W.3d at 455.[4]  Accordingly, the motion to dismiss the following claims against Gamma, CSI, Alpha, Santa Fe, and Doug Maxwell, to the extent that liability is based on the single business enterprise doctrine, is **GRANTED**: (1) Breach of Contract; (2) Breach of Trust and/or Fiduciary Duties; (3) Aiding and Abetting Breach of Trust and/or Fiduciary Duties; and (4) Misappropriation and Conversion of Funds.

---

[4] Movants filed a subsequent Motion for Leave to File Notice of Supplemental Authority on their Motion for Judgment on the Pleadings (doc. 111) seeking to provide notice of a bankruptcy court's recognition of the Texas Supreme Court's decision in *SSP Partners*.  Finding the proposed filing to be cumulative and unnecessary, the Court **DENIES** the Motion.

**B.      Alter Ego as to Gamma, CSI, Alpha, Santa Fe, and Doug Maxwell**

Lincoln General argues that despite the inability to impose liability based on the single business enterprise doctrine, its veil-piercing claims based on the alter ego doctrine survive. However, movants argue that the effort to pierce the corporate veil cannot succeed because Lincoln General fails to plead the alter ego doctrine, and the requisite allegations of fraud, with the specificity required by Rule 9(b).  The movants argue that Lincoln General fails to allege that the Defendants perpetrated an "actual fraud" on it, so it has failed to plead fraud with particularity and any claims based on alter ego must be dismissed.  Lincoln General responds that the allegations in its Amended Complaint meet the requirements for a veil-piercing claim based on alter ego and cannot be dismissed under Rule 12(c).  For the reasons discussed below, the Court agrees with Lincoln General.

The Texas Supreme Court has held "that the limitation on liability afforded by the corporate structure can be ignored only 'when the corporate form has been used as part of a basically unfair device to achieve an inequitable result.'" *SSP Partners*, 275 S.W.3d at 451 (quoting *Castleberry v. Branscum*, 721 S.W.2d 270, 271 (Tex. 1986)).  One of the bases for disregarding the corporate structure and piercing the corporate veil is the "alter ego doctrine."  *Norfolk Southern Ry. Co. v. Trinity Industries Inc.*, 2009 WL 362437, at *5 (N.D. Tex. Feb. 13, 2009).  "Under the 'alter ego doctrine' the corporate veil may be pierced when (1) there is such unity between a corporation and individual that the separateness of the corporation has ceased and (2) holding only the corporation liable would result in injustice." *Id.* (citing *Gentry v. Credit Plan Corp.*, 528 S.W.2d 571, 573 (Tex. 1975)).  A showing of abuse of the corporate structure which results in injustice or inequity is required in order to pierce the corporate veil.  *SSP Partners*, 275 S.W.3d at 451, 455.  Examples include "when the corporate structure has been abused to perpetrate a fraud, evade an existing

- 9 -

obligation, achieve or perpetrate a monopoly, circumvent a statute, protect a crime, or justify wrong." *Id.* at 451 (citing Tᴇx. Bᴜs. Cᴏʀᴘ. Aᴄᴛ art. 2.21 (expires Jan. 1, 2010); Tᴇx. Bᴜs. Oʀɢs. Cᴏᴅᴇ § 21.223 (effective Jan. 1, 2006)); *see also Castleberry*, 721 S.W.2d at 271–72. "Actual fraud" for the purposes of the Texas Business Organizations Code section 21.223 is conduct that "involves dishonesty of purpose or intent to deceive." *See Solutioneers Consulting, Ltd. v. Gulf Greyhound Partners, Ltd.*, 237 S.W.3d 379, 387 (Tex. App.-Houston [14th Dist.] 2007, no pet.) (citing *Castleberry*, 721 S.W.2d at 273); *see also* Texas Pattern Jury Charge § 108.2.

Rule 9(b) of the Federal Rules of Civil Procedure "imposes a heightened level of pleading" in which allegations of fraud must be pled with particularity. *Norfolk Southern Ry. Co.*, 2009 WL 362437, at *3 (citing *Tuchman v. DSC Comm'ns Corp.*, 14 F.3d 1061 (5th Cir. 1994)); Fᴇᴅ. R. Cɪv. Pʀᴏ. 9(b); *see also Hart v. Bayer Corp.*, 199 F.3d 239, 247 n.6 (5th Cir.2000). The Fifth Circuit requires plaintiffs alleging fraud to "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008). In other words, Rule 9(b) requires the Plaintiff to allege with specificity the "time, place, and contents of the false representations, as well as the identity of the person making the representation and what the person obtained thereby." *Williams v. WMX Tech., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997) (quoting *Tuchman v. OSC Communications Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994)).

The rule is not intended "to procure punctilious detail," and the particularity demanded by Rule 9(b) differs with the facts of each case. *Norfolk Southern Ry. Co.*, 2009 WL 362437, at *3 (quoting *Steiner v. Southmark Corp.*, 734 F. Supp. 269, 273 (N.D. Tex. 1990) (Fitzwater, J.)). "Rule 9(b) requires a plaintiff to allege the existence of facts sufficient to warrant the pleaded conclusion

that fraud has occurred." *In re Haber Oil Co.*, 12 F.3d 426, 439 (5th Cir. 1994). The rule must be applied in conjunction with the overall pleading requirements of Rule 8, which requires a short and plain statement of the claim showing that the pleader is entitled to relief. *Landry v Air Line Pilots Ass'n Int'l AFL-CIO*, 892 F.2d 1238, 1264 (5th Cir. 1990). It must also be viewed in light of Rule 8's goal of "simple, concise, and direct" pleadings. *Id.* at 178. If Rule 9(b) is not met, the defendant does not have adequate notice of the nature and grounds of the claim. *Tuchman*, 14 F.3d at 1067. "To avoid a dismissal for failure to state a claim, 'a plaintiff must plead specific facts not mere conclusory allegations.'" *Dorsey*, 540 F.3d at 338 (quoting *Tuchman*, 14 F.3d at 1067).

The pleading requirements of Rule 9(b) may be relaxed to some extent where the facts relating to the alleged fraud are peculiarly within the perpetrator's knowledge. *ABC Arbitrage v. Tchuruk*, 291 F.3d 336, 350 (5th Cir. 2002). While fraud may be pleaded on information and belief under such circumstances, the Fifth Circuit has warned that this exception "must not be mistaken for license to base claims of fraud on speculation and conclusory allegations." *U.S. ex rel Willard v. Humana Health Plan of Texas*, 336 F.3d 375, 385 (5th Cir. 2003)(citing *ABC Arbitrage*, 291 F.3d at 350 n.67). Furthermore, "even where allegations are based on information and belief, the complaint must set forth a factual basis for such belief." *Id.*

In this case, Lincoln General asserts the alter ego doctrine as its basis for piercing the corporate veil to impose liability on Gamma, CSI, Alpha, Santa Fe, and Doug Maxwell. Movants assert Lincoln General has failed to state a claim based on alter ego and the claims based on piercing the corporate veil under the alter ego doctrine must be dismissed.[5] However, Lincoln General argues

---

[5] The Court notes that movants do not argue the Lincoln General has failed in alleging unity between the movants and U.S. Auto. *See Norfolk Southern Ry. Co.*, 2009 WL 362437, at *5. Therefore, the Court

its alter ego allegations meet the requirements of Rule 9(b) by putting the Defendants on sufficient notice to avoid dismissal of its claims.  Furthermore, Lincoln General argues that if the allegations do not meet the particularity requirement of Rule 9(b), the requirement must be relaxed because Lincoln General is entitled to make its fraud allegations "on information and belief."

Lincoln General also argues that many of its claims are not subject to the heightened pleading standard because they do not "arise from the contractual duty" and thus "fall outside the scope of Tex. Bus. Org. Code § 21.223(a)."  Rather, Lincoln General argues, its claims for breach of fiduciary duties or trust, the aiding and abetting of breach of fiduciary duties or trust, and misappropriation and/or conversion (particularly as such claims relate to breach of statutory fiduciary duties) do not relate to contractual obligations and thus a showing of actual fraud is not required. (Response p. 14.)  The Court disagrees.  Section 21.223 limits liability for "any contractual obligation of the corporation *or any matter relating to or arising from the [contractual] obligation*."  Tex. Bus. Orgs. Code § 21.223(a)(2) (emphasis added).    The basis of the duties the Defendants allegedly breached and the agreements on the proper appropriation of funds both have their genesis in the Agreements between the Lincoln General and U.S. Auto.  Thus, while the claims to which Lincoln General refers are tort claims, these claims arise from and are directly related to the contractual obligations. *See* Tex. Bus. Orgs. Code § 21.223(a)(2).  Therefore, all of the claims for which Lincoln General seeks to pierce the corporate veil fall within the requirements of section 21.223 and require allegations of fraud to support the alter ego doctrine.

Upon review of Lincoln General's allegations of fraud and misconduct on the part of

---

need not address that prong of the alter ego doctrine in its analysis.

Defendants, the Court concludes Lincoln General has met the requirements of Rule 9(b) in making

the fraud allegations in support of the alter ego doctrine for imposing liability on the movants.  FED.

R. CIV. PRO. 9(b).  While it is true that Lincoln General never makes an outright allegation of

"actual fraud," the Amended Complaint is peppered throughout with allegations of wrongdoing such

as "misappropriation," "improperly," "impermissibly withholds," "under the guise of collecting its

commissions," and other factual allegations sufficient to meet the requirement that plaintiff allege

wrongdoing sufficient to support the theory of alter ego.  In its Response to the Defendants' Motion,

Lincoln General details its allegations of fraud as follows:

> Lincoln General alleged, e.g., that "to inflate its compensation, U.S.
> Auto improperly changed the way it calculated its own commissions
> despite having used a different agreed upon method for more than
> four years" (Am. Compl.¶ 14); "U.S. Auto withheld and
> misappropriated millions of dollars owing to Lincoln General" (id.);
> U.S. Auto was obligated to handle such funds as a fiduciary (id. ¶¶
> 13-14, 33); upon information and belief, U.S. Auto used this money
> for improper purposes such as the funding of members of the Maxwell
> Group and the enrichment of Doug Maxwell and Jim Maxwell (id. at
> ¶¶ 49, 64, 73, 77); to disguise its thievery of millions, "U.S. Auto
> knowingly inflated its commissions and substantially understated the
> balance due to Lincoln General" (id.¶¶ 44, 48); this inflation of
> commissions and understatement of balances due was accomplished
> through the exclusions of Incurred But Not Reported losses or
> "IBNR" and began (but has since continued) in "mid-2007" with
> respect to the period ended June 30, 2007 (id. ¶¶ 14, 44, 46, 48); and
> this was all done with the assistance of the other Defendants (id. ¶¶
> 44, 51, 60, 64, 69). With respect to the ZBA, Lincoln General alleges
> that Gamma specifically may have "improperly utilized the ZBA" and
> that Lincoln General's damages resulted from "Defendants' individual
> and concerted actions." (id. ¶¶ 54, 55).

(Response p. 13.)  In its Amended Complaint, Lincoln General details the method by which U.S.

Auto allegedly misrepresented the amounts owed to Lincoln General and the time period in which

these acts occurred.  (Am. Compl. ¶¶ 14, 44, 46, 48.); *see Williams*, 112 F.3d at 177.  Punctilious

- 13 -

detail is not required in alleging the fraud and, in this case, Lincoln General has alleged sufficient detail of its allegations of "fraudulent" conduct involving dishonesty of purpose or intent to deceive. *See Norfolk Southern Ry. Co.*, 2009 WL 362437, at *3; *SSP Partners*, 275 S.W.3d at 451; *see also Castleberry*, 721 S.W.2d at 271–73; Tex. Bus. Orgs. Code § 21.223.   Further details of the Defendants' conduct is peculiarly within the Defendants' knowledge and, as Lincoln General argues in its Response, its pleading on information and belief is sufficient to support the alter ego allegations.  *ABC Arbitrage*, 291 F.3d at 350.

Accordingly, movants Doug Maxwell, Gamma, CSI, Alpha, and Santa Fe's motion to dismiss the following claims, to the extent they are based on the alter ego doctrine, is **DENIED**: (1) Breach of Contract; (2) Breach of Trust and/or Fiduciary Duties; (3) Aiding and Abetting Breach of Trust and/or Fiduciary Duties; and (4) Misappropriation and Conversion of Funds.

## C.    Gamma, CSI, and Alpha as Guarantors

In its Amended Complaint, Lincoln General seeks to impose liability on Gamma, CSI, and Alpha, as alleged guarantors of U.S. Auto's performance under the Agreements, for (1) Breach of Contract; (2)  Breach of Trust and/or Fiduciary Duties; and (3) Misappropriation and Conversion of Funds.  Lincoln General asserts Gamma, CSI, and Alpha serve as guarantors of U.S. Auto's performance under the contracts.  In their Motion for Judgment on the Pleadings, Gamma, CSI, and Alpha seek dismissal of the claims against them based on their alleged status as guarantors.  Gamma, CSI, and Alpha argue the contract on which Lincoln General bases its "guaranty" argument does not meet the stringent guidelines set forth in Texas law for forming a guaranty relationship. Therefore, Gamma, CSI, and Alpha argue they are not signatories to the contract and therefore cannot be held liable as guarantors as a matter of law.

A guarantor is a "favorite of the law" and therefore a guaranty agreement is to be strictly construed. *Reece v. First State Bank of Denton*, 566 S.W.2d 296, 297 (Tex.1978); *McKnight v. Va. Mirror Co.*, 463 S.W.2d 428, 430 (Tex.1971). Where uncertainty exists as to the meaning of a contract of guaranty, its terms should be given a construction which is most favorable to the guarantor. *Coker v. Coker*, 650 S.W.2d 391, 394 n.1 (Tex. 1983). The interpretation of a contract is a question of law for the court. *See id.* at 393.

The statute of frauds provides that a guarantee to pay a corporate debt must be in writing and signed by the guarantor. TEX. BUS. & COM. CODE ANN. § 26.01(a), (b)(2) (Vernon 2002); *Dunn v. Growers Seed Assoc.*, 620 S.W.2d 233, 238 (Tex. App.–Amarillo 1981, no writ). Section 26.01 of the Texas Business and Commerce Code, provides, in pertinent part:

> (a) A promise or agreement described in Subsection (b) of this section is not enforceable unless the promise or agreement, or a memorandum of it, is
>
> > (1) in writing, and
> >
> > (2) signed by the person to be charged with the promise or agreement or by someone lawfully authorized to sign for him.
>
> (b) Subsection (a) of this section applies to:
> ...
> > (2) a promise by one person to answer for the debt, default, or miscarriage of another person.

TEX. BUS. & COM. CODE ANN. § 26.01(a), (b)(2). The statute requires "a written memorandum which is complete within itself in every material detail, and which contains all of the essential elements of the agreement, so that the contract can be ascertained from the writings without resorting to oral testimony." *Cohen v. McCutchin*, 565 S.W.2d 230, 232 (Tex.1978); *Park Creek Associates, Ltd. v. Walker*, 754 S.W.2d 426, 428 (Tex. App.–Dallas 1988, writ denied). In order for

- 15 -

a guaranty to be enforceable, "it must, with reasonable clearness, evidence an intent on the part of the party to become liable on an obligation in case of default by the primary obligor." *Block v. Aube*, 718 S.W.2d 914, 915 (Tex. App.–Beaumont 1986, no writ) (citing *Taylor v. First State Bank*, 178 S.W. 35 (Tex. Civ. App.–Fort Worth 1915, no writ)).

Contracts that do not meet the requirements of the statute of frauds, but which have been partially performed, may be enforced in equity if denial of enforcement would amount to a virtual fraud. *Carmack v. Beltway Development Co.*, 701 S.W.2d 37, 40 (Tex. App.–Dallas 1985, no writ). The partial performance must be "unequivocally referable to the agreement and corroborative of the fact that a contract actually was made." *Exxon Corp. v. Breezevale Ltd.*, 82 S.W.3d 429, 439 (Tex. App.–Dallas 2002, pet. denied). "The acts of performance relied upon to take a parol contract out of the statute of frauds must be such as could have been done with no other design than to fulfill the particular agreement sought to be enforced; otherwise, they do not tend to prove the existence of the parol agreement relied upon by the plaintiff." *Exxon Corp.*, 82 S.W.3d at 439–40; *see also Francis v. Thomas*, 106 S.W.2d 257, 260 (Tex. 1937). The key is that the partial performance serves to provide corroboration of the agreement by both parties to the agreement. *See Boyert v. Tauber*, 834 S.W.2d 60, 63 (Tex. 1992); *Carmack*, 701 S.W.2d at 41.

Lincoln General argues that Gamma, CSI, and Alpha are also liable in this suit as guarantors of U.S. Auto's performance under the Agreements. According to Lincoln General, when Doug Maxwell signed the agreement on behalf of U.S. Auto, his signature also served to bind Gamma, CSI, and Alpha as guarantors despite the signature line naming only U.S. Auto. Lincoln General asserts the paragraph in the agreement in which the parties to the agreement agree that Gamma, CSI, and Alpha will serve as guarantors indicates Doug Maxwell intended to bind all of the entities.

As evidence of this, Lincoln General argues that the Amended Complaint is "replete with facts that demonstrate that Doug Maxwell had the authority to sign for Gamma, CSI, and Alpha." Further, Lincoln General asserts, without providing any legal authority, that because "Lincoln General has already partially performed under the contracts, and Movants have accepted benefits under them, equity does not allow Movants to now disavow those contracts." (Response at 16.)

The Court sees no basis for holding Gamma, CSI, and Alpha liable as guarantors. The law is clear that each party serving as a guarantor must be a signatory on the document. *See Dunn*, 620 S.W.2d at 238. These alleged guarantors are not parties to the contract and did not sign the contract. Despite the paragraph in the Agreements in which Lincoln and U.S. Auto agree that Gamma, CSI, and Alpha will serve as guarantors,[6] nowhere do Gamma, CSI, or Alpha agree to this arrangement in writing. Further, there is nothing in the contract that actually states Doug Maxwell is signing on their behalf. The fact that he had authority to sign on behalf of Gamma, CSI, and Alpha does not mean he was doing so here. When Doug Maxwell signed the contract, it is clear that he signed on behalf of U.S. Auto. If he intended to also bind Gamma, CSI, and Alpha as guarantors, the law requires that he follow the strict guidelines set forth for creating such a relationship in writing. *See* TEX. BUS. & COM. CODE ANN. § 26.01(a), (b)(2); *Dunn*, 620 S.W.2d at 238. The Agreements do not express with "reasonable clearness" an intent of Gamma, CSI, and Alpha to

---

[6] The pertinent language from the Reinsurance Agreements is the following:

> The parties agree that all premium, return commission, profit commission and loss adjustment expense obligations under this Agreement shall be secured by the Agent [U.S. Auto] and its affiliated companies, Gamma Group, Inc., CSI Agency Services, Inc. and Alpha Partners, Ltd.

(2002 & 2003 Reinsurance Agreement § 25.16, Movants' Exs. 1 & 2.)

- 17 -

become liable for U.S. Auto's performance under the Agreements.  *See Block*, 718 S.W.2d at 915.

Furthermore, Lincoln General's "part performance" argument provides no basis for taking the contract out of the statute of frauds and holding Gamma, CSI, and Alpha liable as guarantors. It is true that Gamma, CSI, and Alpha could be held liable as guarantors, even without being signatories to the Agreements, if they had rendered part performance corroborating an agreement to act as guarantors.  *See Exxon Corp.*, 82 S.W.3d at 439–40; *Boyert*, 834 S.W.2d at 63; *Carmack*, 701 S.W.2d at 41.  However, the fact that Lincoln General has performed under the contract and movants allegedly accepted benefits under the contract does not mean that Gamma, CSI, and Alpha have partially performed as guarantors or corroborated any alleged agreement that they serve as guarantors.  *See Boyert*, 834 S.W.2d at 63.  Here, Gamma, CSI, and Alpha have rendered no performance as guarantors and have not even acknowledged any status as guarantors under the Agreements.  *Exxon Corp.*, 82 S.W.3d at 439–40.  Furthermore, the Court sees no reason in equity that would compel it to enforce the alleged agreement that Gamma, CSI, and Alpha would serve as guarantors to the Agreements.  *See Carmack*, 701 S.W.2d at 41.  Therefore, the "part performance" doctrine cannot serve as a basis for holding Gamma, CSI, and Alpha liable as guarantors.

Accordingly, because the strict requirements for proving a guarantor relationship have not been met here and the "part performance" doctrine does not apply, as a matter of law, Gamma, CSI, and Alpha cannot be held liable as guarantors to the Agreements.  Therefore, Defendants Gamma, CSI, and Alpha prevail on their motion to dismiss the following claims against them arising from their alleged status as guarantors:  (1) Breach of Contract; (2) Breach of Trust and/or Fiduciary Duties; and (3) Misappropriation and Conversion of Funds.

**D.**     **Unjust Enrichment as to Doug Maxwell, Gamma, CSI, Alpha, and Santa Fe**

Doug Maxwell, Gamma, CSI, Alpha, and Santa Fe move for dismissal of Lincoln General's claim for unjust enrichment against them.  Unjust enrichment is a quasi-contractual claims which is based on the absence of an express agreement.  *Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 684 (Tex. 2000).  Under Texas law, a claim for unjust enrichment lies when one has obtained a benefit from another by fraud, duress, or the taking of undue advantage.  *First Union Nat'l Bank v. Richmont Cap. Partners I, L.P.*, 168 S.W.3d 917, 931 (Tex. App.–Dallas 2005, no pet.).  "Generally, when a valid, express contract covers the subject matter of the parties' dispute, there can be no recovery under a quasi-contract theory because parties should be bound by their express agreements."  *Id.* (citing *Fortune*, 52 S.W.3d at 683).

In this case, Lincoln General cannot make a claim for unjust enrichment when the subject of the dispute is covered by a valid express contract.  *See id.*  The parties do not dispute that there exists a valid, express contract between Lincoln General and U.S. Auto.  In fact the basis of Lincoln General's claims is for actions taken by U.S. Auto, and the other individuals and entities comprising the Maxwell Group, which allegedly violate the terms of the Agreements.  In light of the express contract governing the subject matter of the dispute, there can be no equitable claims under Texas law.  *See Recursion Software, Inc. v. Interactive Intelligence, Inc.*, 425 F. Supp.2d 756, 768 (N.D. Tex. 2006)(holding that unjust enrichment claim must fall in light of express contract);  *Becker v. Nat'l Educ. Training Group, Inc.*, 2002 WL 31255021, at *4 (N.D. Tex. Oct. 7, 2002) (same);  *Video Pipeline, Inc. v. Buena Vista Home Entm't*, 210 F.Supp.2d 552, 568 (D.N.J. 2002 ) (noting "the limited viability of an unjust enrichment claim, by nature a quasi-contractual action, which is brought in the face of an express contract[.]").   Therefore, Doug Maxwell, Gamma, CSI, Alpha, and Santa Fe

prevail on their motion to dismiss the Unjust Enrichment claims.

**E.     Tortious Interference With Contract as to Gamma, CSI, Alpha, and Santa Fe**

As to the Tortious Interference with Contract claims, Defendants Gamma, CSI, Alpha, and Santa Fe argue they must be dismissed under Rule 12(c) "to the extent that the claim is based upon allegations that the movants 'encouraged, aided and/or assisted'" U.S. Auto's alleged breach of contract. (Motion at 15.)  Movants recognize that "inducing a party to breach a contract with a third-party, without lawful privilege or excuse, state a claim under Texas law." (*Id.*)  Yet they appear to ask the Court to prune Plaintiff's claims by finding certain allegations made by Plaintiff do not support a tortious interference claim as a matter of law and dismissing the claims to the extent they are based on allegations that Defendants "encouraged, aided and/or assisted" U.S. Auto's breach.

The Court notes that the question for a Rule 12(c) motion is "whether in the light most favorable to the plaintiff, the complaint states a valid claim for relief." *See MySpace, Inc.*, 528 F.3d at 418.  The Amended Complaint contains allegations that Defendants Gamma, CSI and Alpha "induced, encouraged, aided and/or assisted" U.S. Auto's breach.  The Court finds that these allegations are aimed, specifically, at the "interference" element of tortious interference that requires a showing that defendant "induced" or "took in active part in persuading" or "caused" the party to breach.  *See John Paul Mitchell Sys. v. Randalls Food Mkts., Inc.*, 17 S.W.3d 721, 730–31 (Tex. App.–Austin 2000, pet. denied) (internal citations omitted); *see also Seelbach v. Clubb*, 7 S.W.3d 749, 757 (Tex. App.–Texarkana 1999, pet. denied) ("interference includes any act which retards, makes more difficult, or prevents performance.").  The Court concludes that the language to which the movants specifically take issue – "encouraged, aided and/or assisted" – makes allegations in support of the "interference" element of the cause of action.

Although the Court recognizes the case cited by the movants indicating that "aiding and abetting tortious interference" is not a cause of action separate from a conspiracy claim, this case does not persuade the Court that Plaintiff has failed to state a claim by alleging Defendants "encouraged, aided and/or abetted" U.S. Auto's breach of contract." *See O'Kane v. Coleman*, 2008 WL 2579832, at *5 (Tex. App.–Houston [14th Dist.] July 1, 2008, no pet. h.) (mem.op.).[7] The Court concludes that Plaintiff has stated a claim for tortious interference with contract and **DENIES** Defendants Gamma, CSI, Alpha, and Santa Fe's Motion for Summary Judgment on that claim.

**F.      Attorney's Fees as to Gamma, CSI, Alpha, Santa Fe, Doug Maxwell, and Jim Maxwell**

All movants on the Motion to Dismiss seek dismissal of Lincoln General's claim for Attorney's Fees under Chapter 38 of the Texas Civil Practice and Remedies Code.  The movants argue that Chapter 38 applies only where the party against which fees are sought is a party to the contract allegedly breached.  Here, the movants argue, they are not parties to any of the contracts at issue and, therefore, Chapter 38 is inapplicable.  Furthermore, the movants argue that Chapter 38 is inapplicable to tort claims, including tortious interference.  Lincoln General responds that it is entitled to recovery of attorney's fees directly against U.S. Auto based on its breach of contract and, because Gamma, CSI, and Alpha acted as guarantors, they would also be liable for these fees. Furthermore, Lincoln General argues that Doug Maxwell, Gamma, CSI, Alpha, and Santa Fe would

---

[7]   The Court notes that the only authority cited by the movants in support of their argument holds that "aiding and abetting tortious interference" does not constitute a separate cause of action from conspiracy. *See O'Kane*, 2008 WL 2579832, at *5.  This case does not hold that "aiding and abetting" a *breach of contract* does not constitute a cause of action for tortious interference with a contract. The claim brought in *O'Kane* is one step further removed from the claim at issue in this case.  Furthermore, this case is an unpublished memorandum opinion.  According to the Texas Rules of Appellate Procedure, such opinions "have no precedential value." *See* TEX. R. APP. PROC. 47.7.  This Court will not premise the dismissal of Plaintiff's tortious interference claims on a case that carries no precedential value under state law.

- 21 -

be liable for U.S. Auto's obligations, including the alleged breach of contract, under the alter ego doctrine. Lincoln General provides no basis for recovery of attorney's fees against Jim Maxwell.

In its Amended Complaint, Lincoln Generally makes a general claim against all Defendants that "pursuant to Section 38.001 et seq. of the Texas Civil Practice and Remedies Code, Defendants are obligated to pay Lincoln General's reasonable attorneys' fees and costs incurred herein through any appeal." (Am. Compl. ¶ 83.)   Such a claim for attorney's fees is based on prevailing on the claims for breach of contract brought against Defendants. Those claims survive this Motion. Therefore, the Court cannot conclude that Lincoln General has failed to state a claim for attorney's fee against Gamma, CSI, Alpha, Santa Fe, and Doug Maxwell. Accordingly, Gamma, CSI, Alpha, Santa Fe, and Doug Maxwell's motion to dismiss the claim for attorney's fees is **DENIED**. However, Lincoln General has not pleaded any breach of contract claim against Jim Maxwell. The only claims against Jim Maxwell are for tortious interference and aiding/abetting breach of trust and/or fiduciary duties. Because Lincoln General states no claim against Jim Maxwell for which there is recovery of attorney's fees, Jim Maxwell's motion to dismiss the claim for attorney's fees is **GRANTED**.

## IV.

## CONCLUSION

The Defendants Gamma, CSI, Alpha, Santa Fe, Doug Maxwell, and Jim Maxwell's Motion to Dismiss is **DENIED in part, and GRANTED in part**.

As to the (1) Breach of Contract; (2) Breach of Trust and/or Fiduciary Duties; (3) Aiding and Abetting Breach of Trust and/or Fiduciary Duties; and (4) Misappropriation and Conversion of Funds claims against Gamma, CSI, Alpha, Santa Fe, and Doug Maxwell, the Motion to Dismiss

- 22 -

is **GRANTED** to the extent those claims are based upon the Single Business Enterprise doctrine and **DENIED** to the extent those claims are based upon the Alter Ego doctrine.  As to the (1) Breach of Contract; (2) Breach of Trust and/or Fiduciary Duties; and (3) Misappropriation and Conversion of Funds claims against Gamma, CSI, and Alpha, the Motion to Dismiss is **GRANTED** to the extent those claims are based on Gamma, CSI, and Alpha's alleged status as Guarantors.  The Court notes that the rulings on these three theories of liability do not result in the actual dismissal of any cause of action brought by Lincoln General.  Because the claim to impose liability based on the Alter Ego doctrine survive this Motion, the related causes of action cannot be dismissed despite the Court's ruling as to Single Business Enterprise and Guaranty.

As to the Tortious Interference with Contract claims against Jim Maxwell, Gamma, CSI, Alpha, and Santa Fe, the Motion to Dismiss is **DENIED**.

As to the Unjust Enrichment claims against Doug Maxwell, Gamma, CSI, Alpha, and Santa Fe, the Motion to Dismiss is **GRANTED**.  Accordingly, the Unjust Enrichment claims against Doug Maxwell, Gamma, CSI, Alpha, and Santa Fe are **DISMISSED**.

As to the Attorney's Fees claims against Gamma, CSI, Alpha, Santa Fe, and Doug Maxwell, the Motion to Dismiss is **DENIED**.  As to the Attorney's Fees claims against Gamma, CSI, and Alpha, the Motion to Dismiss is **GRANTED** only to the extent those claims are based on their alleged status as guarantors.  However, Jim Maxwell's motion to dismiss the claim for attorney's fees against him is **GRANTED** and the claim for attorney's fees against Jim Maxwell is **DISMISSED**.

**SO ORDERED.**

SIGNED April 29, 2009.

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE